IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRANCISCO PEREZ MEDINA,

    Petitioner,                   No. CIV S-06-2534 LKK GGH P

    vs.

M. CRAMER, et al.,

    Respondents.               FINDINGS AND RECOMMENDATIONS

_____/

Introduction

        Petitioner, proceeding with appointed counsel, has filed a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pending before the court is petitioner's amended motion[1] to stay the petition, filed on 12/20/07, to which respondent filed an opposition, after which petitioner filed a reply. The matter came on for hearing on 4/10/08, with Joseph Wiseman appearing for petitioner and Ward Campbell representing respondent.

Amended Petition

        Petitioner was convicted of second degree murder and personal use of a firearm and sentenced on 1/23/98 to a term of 15 years to life. Amended Petition (AP), p. 1; Docket Entry (DE) # 27. Petitioner sets forth the following grounds for relief: 1) ineffective assistance

---

[1] Petitioner's supporting declaration and memorandum in support of the motion is found at docket entry # 29, filed on 10/30/07.

1

of counsel (IAC) by failure to move into evidence statements of two percipient witnesses who provided exculpatory information regarding petitioner's role in the shooting; 2) trial court error in refusal to grant petitioner's request for immunity for defense witnesses Rios and Cardenes; 3) IAC for failure to request "antecedent threat" instruction; 4) trial court error in failure to give "antecedent threat" instruction sua sponte; 5) IAC for failure to move for dismissal at close of prosecution's case; 6) IAC for failing to communicate adequately to petitioner plea offer terms and to advise him of the consequences of rejecting the offer.  AP, pp. 4-24.  Petitioner avers that only the sixth claim is unexhausted.  AP, p. 21.

Motion to Stay

        The only claims at issue in this motion are claims 5 and 6.  Petitioner's motion was specifically addressed to claim 6, that petitioner was subjected to ineffective assistance of counsel by counsel's failure to advise petitioner of a plea offer made by the prosecution before jury selection on 12/09/97.  In Rhines v. Weber, 544 U.S. 269, 125 S. Ct. 1528 (2005), relied on by both parties, the United States Supreme Court found that a stay and abeyance of a mixed federal petition should be available only in the limited circumstance that good cause is shown for a failure to have first exhausted the claims in state court, that the claim or claims at issue potentially have merit and that there has been no indication that petitioner has been intentionally dilatory in pursuing the litigation, that is, there is no indication that petitioner engaged in "abusive litigation tactics or intentional delay."  Rhines, supra, at 277-78, 125 S. Ct. at 1535.

        What constitutes good cause has not been precisely defined except to indicate at the outer end that petitioner must not have engaged in purposeful dilatory tactics, Rhines, supra, 125 S. Ct. at 1535, and that "extraordinary circumstances" need not be found.  Jackson v. Roe, 425 F.3d 654, 661-662 (9th Cir. 2005).  "But as the Jackson court recognized, we must interpret whether a petitioner has "good cause" for a failure to exhaust in light of the Supreme Court's instruction in Rhines that the district court should only stay mixed petitions in "'limited circumstances.'"  Id. at 661. We also must be mindful that AEDPA aims to encourage the finality

of sentences and to encourage petitioners to exhaust their claims in state court before filing in federal court."

Petitioner's effort to show good cause for the failure to have exhausted claim 6 is that he neither speaks or writes English and he only became aware of the substance of the claim after obtaining the assistance of a "jailhouse lawyer," who was able to translate the transcripts of the 12/09/07 transcript of the hearing and the court's minute entry for that date indicating that petitioner had rejected the offer.  Moreover, counsel contends, petitioner was in lockdown for several years after entering the custody of the California Department of Corrections and Rehabilitation (CDCR), and was thus unable to access his files and records adequately to pursue habeas relief in the state courts on this claim.   Counsel supports these contentions with his own declaration on information and belief, but none from petitioner himself.  Petitioner asks that should the court not issue a stay, that leave be granted to amend the amended petition to omit claim 6.  Motion to Stay-DE # 28 & # 29.  Petitioner relies on Mendoza v. Carey, 449 F.3d 1065, 1070 (9th Cir. 2006), wherein the Ninth Circuit found that a "non-English speaking petitioner seeking equitable tolling must, at a minimum, demonstrate that during the running of the AEDPA time limitation, he was unable, despite diligent efforts, to procure either legal materials in his own language or translation assistance from an inmate, library personnel, or other source."

In opposition, as to claim 6, respondent undermines the assertion that petitioner did not have any proficiency in the English language by pointing out that petitioner indicated that he was 29 at the time of the offense, that he had illegally entered the United States at 17, some 12 years earlier, and that he had graduated from high school in Mexico.[2]  Opposition (Opp.), DE # 34, p. 4, Ldg. Doc. No. 4, probation report.  Respondent goes on to note that petitioner had held down various jobs in the U.S., at some of which he spoke English, asserting that petitioner had

---

[2] The court notes that in the lodged videotaped police interrogation, petitioner did assert that he was 29, but also averred at that time that he had been in this country for nine years and that he had a viable green card.  His testimony at the hearing on the defense's motion in limine, evidently seeking to show a violation of Miranda to exclude his statement to Detective Faust, petitioner estimated that he had been in the U.S. nine and a half years and that he had 12 years of education in Mexico.  Ldg. Doc. No. 3.

been steadily exposed to English for more than a decade through work and other daily experiences. Id. & Lodged Document (Ldg. Doc.) No. 3. Petitioner indicated that he attained his knowledge of English through his work and on the streets. Ldg. Doc. No. 3.

Respondent points out that petitioner's interview with the Sacramento Police Department's Detective Keith Faust was conducted entirely in English, with questions posed in English without an interpreter, and petitioner responding appropriately in English, also noting that while petitioner had an interpreter at the trial, the trial judge denied the motion to exclude the statement to Detective Faust on the basis that petitioner's limited understanding of English resulted in his failure to understand the advisement of his Miranda rights. Ldg. Doc. Nos. 3, 5 through 7 (Ldg. Doc. No. 6 is at least a large portion of the written transcript of the videotaped interrogation).[3]

In the court's review of the videotape of the police interview of petitioner in 1997, it was noted that petitioner converses without significant difficulty in English in relating his version of the circumstances of the shooting, even employing the kind of idiomatic expressions and colloquialisms in English which connote a reasonable familiarity with English. He also appears to be able to put some things in writing, whether a map or an address, to clarify for the English-speaking detective. It is true that when he is afforded some time alone with his girlfriend, to the extent that any such conversation is audible, they appear to be conversing only in Spanish.[4] While it is clear that Spanish is petitioner's first language, he simply does not come close to displaying the level of incomprehension that would make Mendoza relevant, even in the more liberal context of a finding of good cause for the delay in bringing this claim. Respondent emphasizes in the reply that petitioner was assisted by a Spanish interpreter at trial which counsel contends signifies that the trial judge was sufficiently persuaded of petitioner's insufficient

---

[3] In listening to the videotape of the interview, the court did not make use of the written transcript in order not to be influenced as to what was being said.

[4] Petitioner has elsewhere stated that the girlfriend, Delores, has a greater command of English than he (Ldg. Doc. No. 3).

4

English proficiency (DE # 41); however, the same trial judge indicated that his own review of the police interview showed "that the language that the defendant uses during this exhibit that he has a large English vocabulary, and he does have knowledge of proper grammar. It also indicates that he does have knowledge of a lot of English slang." Ldg. Doc. No. 3, p. 61.

        Petitioner argues against respondent's contention that petitioner's increasing proficiency in English since he has been incarcerated should have enabled him to previously exhaust claim 6 in state court, with petitioner's counsel maintaining that petitioner's English proficiency in 1998 tested at a first grade level, somehow reverting to kindergarten level in 1999, then improving to a second grade level in 2000. DE # 41, p. 2, citing Ldg. Doc. No. 2. Petitioner's counsel acknowledges "episodic improvements in language skills," but asserts it was not to a level sufficient to use English to set forth a post-conviction claim for relief. The court's own review indicates that petitioner, for example, was described in a 9/30/99 Education Progress Report as "above average in reading and spelling," but as needing work in language. Ldg. Doc. No. 8. He appears to have advanced from Adult Basic Education I to Adult Basic Education II as of July 2000. Id. There is no doubt that petitioner's scores indicate that he faced challenges in his reading and language skills, but neither do they indicate that he was ever altogether illiterate in English. It is also notable that at least as of 2005, petitioner was assigned, inter alia, as a legal clerk in the Folsom State Prison library and commended as a good worker. Ldg. Doc. No. 11.

        Nor does petitioner provide specifics for lockdown periods that could have hampered any ability of petitioner to exhaust his claim. The reference to discovering the basis for claim 6 only after a jailhouse lawyer was able to translate the transcript of the 12/09/07 hearing lacks merit in light of the evidence of petitioner's basic grasp of English as demonstrated at the police interview in 1997. While this court indicated at the hearing that it would have been preferable for the trial judge to have asked if petitioner understood what he was doing in denying the plea offer, the undersigned also stated that it is also the practice of this court to accept defense counsel's representation without further inquiry.

The court agrees with respondent that petitioner's apparent understanding of the language was such that petitioner should have been able to understand the terms of the plea, which the trial judge himself set forth in English, even without the interpreter; further, as the undersigned noted at the hearing on this motion, were there any issue of a failure on the part of the interpreter in the colloquy, there could never be any support for such a claim at this juncture as there is no evidence of any electronic recording of the event. Ldg. Doc. No. 13.

While the court noted at the hearing on this motion (and above) that to make a showing of "good cause" requires something less than the showing required to warrant equitable tolling, in this case, petitioner has simply failed to make an adequate showing of cause for having failed to bring this claim for a decade after his conviction, and this court will recommend denial of the motion to stay.

Respondent also notes in opposition, that claim 5, a claim that petitioner's trial counsel was ineffective for failing to move for dismissal at the end of the prosecution's case, while raised in the state court appellate brief, is a claim that has also not been exhausted in the state supreme court, a point that is confirmed by the court's review of the petition for review to the state supreme court.[5] See Ldg. Doc. Nos. 1 and 2. That being the case, the court agrees with respondent that there can be no good cause shown for failing to proceed at that time, that is after the 4/30/99 state court of appeal denial, in his brief to the state supreme court on that claim, apparently filed on or around 5/08/99.[6] Respondent also observed that it is reasonable to conclude that petitioner's own appellate counsel abandoned the claim after reading the state court of appeal opinion and concluding that the "contentions were flawed." Opp., p. 3, DE # 34. While petitioner appeared to concede that claim 5 was unexhausted and acknowledged both in the reply and at oral argument that it might be procedurally barred, he resolutely did not wish to concede that a state petition at this point would be deemed procedurally barred. As was pointed

---

[5] Petitioner has conceded that there has only been one filing in the state supreme court, the petition for review. DE # 27, pp. 2-3.

[6] See respondent's Lodged Doc. No. 2.

out at the hearing, however, to proceed to attempt to exhaust would inevitably engender a Clark/Dixon[7] bar.

As the undersigned indicated at the hearing, the court will recommend that both claims 5 and 6 be stricken from the amended petition.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's amended motion for a stay and abeyance, filed on 12/20/07(#33), be denied, and claims 5 and 6 be stricken from the amended petition;

2. This matter proceed on the amended petition as to claims 1 through 4 only; and

3. Upon adoption of these findings and recommendations, should that occur, respondent be directed to file an answer within 30 days, and, thereafter, petitioner be granted 30 days to file a reply/traverse.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **ten days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: 09/04/08

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

GGH:009
medi2534.mtn

---

[7] In re: Clark, 5 Cal.4th 750, 21 Cal. Rptr.2d 509 (1993)(court will not consider successive or delayed petitions); Ex parte Dixon, 41 Cal.2d 756, 759, 264 P.2d 513 (1953)(general rule is, absent special circumstances that constitute excuse for failing to appeal, writ of habeas corpus "will not lie where the claimed errors could have been, but were not raised upon a timely appeal from a judgment of conviction.")